JUDGE BRODERICK

**KILPATRICK TOWNSEND &
STOCKTON LLP**
Frederick L. Whitmer (FW-8888)

## 14 CV   7616

The Grace Building
1114 Avenue of the Americas
New York, NY, USA 10036-7703
Telephone: (212) 775 8700
Facsimile: (212) 775 8800

Wab Kadaba (Georgia Bar No. 405727)
Mitch Stockwell (Georgia Bar No. 682912)
Richard Goldstucker (Georgia Bar No. 940472)

1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

RECEIVED
SEP 19 2014
U.S.D.C. S.D.N.Y.
CASHIERS

*Attorneys for Plaintiffs Sanford L.P.* (d/b/a DYMO) and DYMO B.V.B.A.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANFORD L.P. (d/b/a DYMO), and<br><br>DYMO B.V.B.A.<br><br>                              Plaintiffs,<br><br>             v.<br><br>ESSELTE AB,<br><br>ESSELTE LEITZ GMBH & CO. KG,<br><br>and<br><br>ESSELTE CORPORATION<br><br>                    Defendants. | 14 Civ. _____<br><br><br>**COMPLAINT** |

1

Plaintiffs Sanford L.P. and DYMO B.V.B.A., by and through undersigned counsel, make and file this Complaint against Defendants Esselte AB, Esselte Leitz GmbH & Co., KG and Esselte Corporation (collectively, "Esselte" or "Defendants"), and hereby allege and demand a jury trial as follows:

## NATURE OF THE ACTION

1.     This action seeks damages and injunctive relief for Defendants' acts of making, using, selling, offering for sale and/or importing Leitz Icon printers that infringe Plaintiffs' U.S. Patent Numbers 5,658,083, 5,826,995, 6,152,623, 6,890,113, 7,140,791, and 7,990,567 (collectively, "Asserted Patents").  A true and correct copy of each of the Asserted Patents is attached as Exhibits 1 through 6.

## THE PARTIES

2.     Plaintiff Sanford L.P. ("Sanford") is an Illinois limited partnership with its principal place of business at 3500 Lacey Road, Downers Grove, Illinois 60515. Sanford does business as DYMO and operates the DYMO business, which is in the business of designing, developing, manufacturing, distributing, servicing, selling, marketing and supplying labeling printers, label makers, label embossers and related consumables.

3.     Plaintiff DYMO B.V.B.A. ("DYMO") is a Belgian closed limited liability company located at Industriepark-Noord 30, Sint-Niklaas, Belgium.  DYMO is also in the business of designing, developing, manufacturing, and distributing labeling printers, label makers, label embossers and related consumables and each of Sanford and DYMO work together in enhancing that business.

4.     Plaintiffs are each wholly-owned subsidiaries of Newell Rubbermaid, Inc. ("Newell"), a Georgia corporation with its principal place of business located at Three Glenlake

2

Parkway, Atlanta, Georgia 30328.   In this Complaint, Newell and its subsidiaries, including Sanford and DYMO, are referred to as the "Newell Companies."

5.    Defendant Esselte AB is a Swedish corporation with its principal place of business located at Sundbybergsvägen 1, 171 73 Solna, Sweden.

6.    Defendant Esselte Leitz GmbH & Co. KG is a German partnership with its principal place of business located in Stuttgart, Germany.

7.    Defendant Esselte Corporation is an Arizona company with an address of 8465 N. 90th Street Pima Center, Suite 6 Scottsdale, AZ 85258.   Esselte Corporation can be served through National Registered Agents Inc., 2390 Camelback Rd, Phoenix, AZ 85016.

8.    Esselte Corporation and Esselte Leitz GmbH & Co., KG are each wholly-owned subsidiaries of Esselte AB.  Esselte AB, Esselte Leitz GmbH & Co., KG and Esselte Corporation are collectively referred to as "Esselte."

## FACTUAL BACKGROUND

9.    Prior to 2005, Esselte AB owned DYMO AB, a corporation organized under the laws of the Kingdom of Sweden, as well as Esselte Holdings, Inc., a Delaware corporation and Esselte BVBA, a corporation organized under the laws of the Kingdom of Belgium.

10.    DYMO AB, Esselte Holdings, Inc. and Esselte BVBA (collectively, "the Companies") were in the business of designing, developing, manufacturing, distributing, servicing, selling, marketing and supplying labeling printers, label makers, label embossers and related consumables.

11.    On July 28, 2005, Newell on behalf of itself and its affiliates entered into a Stock Purchase Agreement ("SPA") with Esselte AB and purchased the Companies -- DYMO AB, Esselte Holdings, Inc. and Esselte BVBA -- for approximately $730 million.  Esselte BVBA was an earlier name of Plaintiff DYMO.

3

12.     The Companies, as well as Esselte Corporation and DYMO Corporation, owned various intellectual property that, pursuant to the SPA, was to be assigned and transferred in connection with the sale of the Companies and their business to Newell.

13.     U.S. Patent Numbers 5,658,083, 5,826,995, 6,152,623, 6,890,113, 7,140,791, and 7,990,567 and/or the patent applications leading thereto were among the patent rights originally owned by the Companies and thus transferred to the Newell Companies pursuant to the SPA.

14.     Various employees of the Companies were inventors of the Asserted Patents, including David Block, who was an inventor of U.S. Patent Number 6,890,113.  After the SPA, Mr. Block and other employees of the Companies, including Philip J. Damiano, Kris Vandermeulen and Tom De Fruytier remained employed with one or more of the Companies after Newell purchased the Companies and those Companies became affiliates or divisions of the Newell Companies.

15.     Before the SPA was executed in 2005, Mr. Damiano had acted as President of the DYMO division of Esselte.  After the SPA, Newell retained Mr. Damiano as the President and General Manager of the Newell Companies' DYMO division until his separation in 2008.

16.     Before the SPA was executed in 2005, Mr. Block worked as the Vice President and Chief Technology Officer for DYMO Corporation.  After the SPA, Mr. Block became Vice President of Research and Development and Technology for the Newell Companies' DYMO division until his separation in 2011.

17.     Before the SPA was executed in 2005, Mr. Vandermeulen acted as a design engineer for Esselte thermal printers and consumables.  After the SPA, Mr. Vandermeulen likewise remained employed by the Newell Companies' DYMO division, eventually becoming a senior manager for global research and development of DYMO products before his separation in

2012.  During his employment, Mr. Vandermeulen was named as one of several inventors on patent rights which he assigned to one or more of the Newell Companies.

18.     Before the SPA was executed in 2005, Mr. De Fruytier acted as an international marketing manager for the DYMO LabelWriter product category.  After the SPA, Mr. De Fruytier likewise remained employed by the Newell Companies' DYMO division as a senior marketing manager from immediately after the SPA until his separation in 2012.

19.     While at the Newell Companies' DYMO division, each of the above-identified employees remained involved in DYMO's business of designing, making and selling label printers and related materials.

20.     In 2012, Esselte hired Mr. Damiano as the President of New Business Development.  Likewise, in 2012, Esselte hired Mr. Block as Vice President of Product Development.  In 2012, Esselte hired Mr. Vandermeulen as an engineer.  At least by 2014, Esselte hired Mr. De Fruytier as a marketing category manager.  Esselte assigned each of these employees to designing, developing, and marketing a printer and related products that would compete with DYMO's business.

21.     Some of the re-hired employees sought to conceal their new employment.  For instance, Mr. Vandermeulen had, by virtue of his prior employment with the Newell Companies, obligations to execute papers associated with patent applications.  When questioned about his current employment, he informed Newell personnel he was not working for Esselte, only to be contradicted when Esselte's human resource department later informed Newell personnel that Esselte had, in fact, hired Mr. Vandermeulen.

22.     In February, 2014, Mr. Block, as Vice President, filed an initially confidential, application for the Leitz Icon printer on behalf of Esselte Leitz GmbH & Co. KG with the

Federal Communications Commission ("FCC") to obtain authorization for marketing the Leitz Icon printer. The draft user manual associated with this application included comments indicating that additional material was needed from "Kris," which, on information and belief, was a reference to Kris Vandermeulen. In any event, the FCC ultimately issued a non-transferable equipment authorization to Esselte Leitz GmbH & Co. KG, the manufacturer or importer of the Leitz Icon printer and only later released the application materials for public review.

23.     Sometime in the Spring of 2014, Defendants announced the launch of the Leitz Icon Printer. A true and correct copy of the Leitz Icon Printer user Guide is attached hereto as Exhibit 7 and fully incorporated herein. Page 6 of the user guide reads:

The Leitz Icon printer is the heart of your Icon Smart Labeling System. Using the printer, you can print a wide variety of labels, name and visitor badges, and more. Because the printer can cut labels to size, you can use a single label cartridge to print many different types of labels, minimizing the need to switch cartridges. When you do need to change cartridges, you have a choice of paper or plastic self-adhesive labels, as well as non-adhesive card stock. All label types are available in multiple widths to meet a variety of applications.

The printer connects to your computer wirelessly or using the included USB cable. You can also print labels from your iPad using the Leitz Icon app or print remotely using Google Cloud Print.

Getting to Know the Printer



24.     The Leitz Icon Printer utilizes an Intelligent Label Cartridge described on page 7:

6

## Getting to Know the Intelligent Label Cartridge

Leitz Icon Intelligent Label Cartridges are easy to load into the printer and are recyclable*. Each cartridge has a folding label guide that opens to load and print labels and closes to protect labels during storage. The Intelligent Label Cartridge uses a special cartridge identification chip to relay information about the label cartridge, such as the type and size of the labels, the capacity of the label cartridge, and the number of labels remaining, to the software.

> **NOTE** Avoid handling the cartridge identification chip as this may damage the chip. If the chip becomes damaged, the label cartridge may not work properly.



25.     The Leitz Icon Printer further includes software that is used to design and print labels via, among other things, a wireless connection.

26.     Messrs. Damiano, Block, Vandermeulen and De Fruytier were aware that the Newell Companies' DYMO division had multiple patents, including the Asserted Patents, that covered various aspects of label printers, including label printers made, imported, used or sold by Newell's DYMO division.

27.     Esselte AB, Esselte Leitz GmbH & Co. KG and Esselte Corporation were likewise each aware that the Newell Companies' DYMO division had multiple patents, including the Asserted Patents, that covered various aspects of label printers, including the label printers made, used and sold by Newell's DYMO division.

28.     Esselte AB specifically represented within the SPA, with Esselte Leitz GmbH & Co. KG and Esselte Corporation's knowledge, consent and cooperation, that the patents, including the Asserted Patents, conveyed under the SPA were valid and binding.

29.     Esselte AB specifically represented within the SPA, with Esselte Leitz GmbH & Co. KG and Esselte Corporation's knowledge, consent and cooperation, that the assigned

patents, including the Asserted Patents, were used in the conduct of the business Newell purchased, namely, the business of designing, developing, manufacturing, distributing, servicing, selling, marketing and supplying labeling printers, label makers, label embossers and related consumables.

30.     The Leitz Icon Printer, software and consumables are marketed through the same channels and to the same consumers as Newell's DYMO printers, software and consumables.

31.     Despite their express knowledge of and familiarity with the Asserted Patents, Defendants re-hired or caused to be re-hired former personnel employed by the Newell Companies that had express knowledge of the Asserted Patents.

32.     Defendants have designed, developed and marketed the Leitz Icon printer to compete with the Newell Companies' DYMO division and its products.

33.     Defendants have made, imported, used, offered for sale and sold the Leitz Icon printer and associated software and consumables that are covered by, and infringe, the Asserted Patents, including the very patents sold to the Newell Companies by Esselte pursuant to the SPA.

## JURISDICTION AND VENUE

34.     This action arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. § 271, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §1331 and §1338(a).

35.     Esselte AB, by and through its wholly-owned subsidiaries and agents, Esselte Corporation and Esselte Leitz GmbH & Co. KG, has caused the manufacture, importation, offer for sale, sale and use within the United States and this judicial district of the Leitz Icon printer, related software and consumables.

36.     Esselte Leitz GmbH & Co. KG is the manufacturer or importer of the Leitz Icon printer.  Esselte Leitz GmbH & Co. KG additionally operates and maintains a website through

which users within the United States and this judicial district may download software and firmware for using the infringing Leitz Icon printer. Esselte Corporation likewise offers, to users within the United States and this judicial district, software for using the infringing Leitz Icon printer.

37.     Esselte Leitz GmbH & Co. KG, doing business as "Leitz America," and Esselte Corporation, each offer users instructional videos within the United States and this judicial district for potential or actual purchasers of infringing Leitz Icon printers, related software and consumables.

38.     Esselte Leitz GmbH & Co. KG, doing business as "Leitz America," and Esselte Corporation, each offer for sale and sell within the United States and this judicial district the infringing Leitz Icon printer and related software and consumables.

39.     Each of the Defendants is present within or has minimum contacts with the State of New York and the Southern District of New York, and each has purposefully availed itself of the privileges of conducting business in the State of New York and in the Southern District of New York. Each Defendant has sought protection and benefit from the laws of the State of New York and regularly conducts business within the State of New York and within the Southern District of New York, and Plaintiffs' causes of action arise from Defendants' business contacts and other activities in the State of New York and in the Southern District of New York.

40.     Each Defendant, directly and/or through its authorized agents, imports, distributes, offers for sale, sells, and/or advertises products and services in the United States, the State of New York, and the Southern District of New York including but not limited to the Leitz Icon printer. Each Defendant solicits, directly or through intermediaries, customers in the State of New York and in the Southern District of New York and has paying customers who are

residents of the State of New York and the Southern District of New York and who use the Leitz Icon printer and related consumables and software in the State of New York and in the Southern District of New York.

41.     Further, pursuant to the SPA, Defendant Esselte AB consented to submit to exclusive jurisdiction and venue in any federal court located in the State of New York, including this Court, as to any actions arising out of or relating to the SPA or the transactions therein. Esselte AB's wholly-owned subsidiaries and agents, Esselte Corporation and Esselte Leitz GmbH & Co. KG, each are in privity with or controlled by Esselte AB and/or were transaction participants in connection with the SPA.  Esselte Corporation and Esselte Leitz GmbH & Co. KG each are accordingly bound by the jurisdiction and venue clause in the SPA.  As the causes of action at issue involve the very patent rights transferred under the SPA by Esselte AB and its subsidiaries to the Newell Companies, Plaintiffs now bring this action for patent infringement in this Court.

## COUNT ONE
## <u>WILLFUL INFRINGEMENT OF U.S. PATENT NO. 5,658,083</u>

42.     Plaintiffs reallege and incorporate by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

43.     U.S. Patent Number 5,658,083 ("the '083 Patent") is entitled "Cassette for a Thermal Printer."  The '083 Patent was duly and legally issued on August 19, 1997 by the United States Patent and Trademark Office.  A true and correct copy of the '083 Patent is attached hereto as Exhibit 1.

44.     DYMO is the owner of the '083 Patent.  Sanford is the exclusive licensee of the '083 Patent and possesses all rights of recovery under the '083 Patent, including the exclusive right to sue for infringement and recover past damages.

10

45.    The '083 Patent provides, among other things, "a tape cutting apparatus for cutting off a portion of image receiving tape having an image receiving layer and backing layer, comprising: a cutter support member carrying a blade; a tape holding surface positioned and located to hold said tape during cutting; a tape support surface which supports the tape during cutting at both sides of a cutting location, said support surface defining a slot at said cutting location; and a means for moving the blade into the slot and through the whole thickness of the tape while the tape is held by the tape holding surface on both sides of said cutting location to cut-off a portion of the tape; and a tape bending surface over which the tape is bent while the tape is being cut, such that when the tape is released from the tape holding and tape support surfaces, the image receiving layer and the backing layer tend to separate from one another at the cut edge."

46.    Each Defendant has infringed one or more claims of the '083 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '083 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

47.    Each Defendant has also infringed under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '083 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '083 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '083 Patent to the injury of Sanford.

48.    Each of the Defendants, as the original owner or affiliate of the original assignee of the '083 Patent has had knowledge of the '083 Patent since its filing and issue date, and by

committing the actions described above, had specific intent to induce infringement of the '083 Patent pursuant to 35 U.S.C. § 271(b).

49.   Each of the Defendants has willfully and intentionally infringed upon the '083 Patent without authority and/or license from Plaintiffs. Defendants' infringement has damaged Plaintiffs.

50.   Plaintiffs are entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT TWO
## WILLFUL INFRINGEMENT OF U.S. PATENT NO. 5,826,995

51.   Plaintiffs reallege and incorporate by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

52.   U.S. Patent Number 5,826,995 ("the '995 Patent") is entitled "Cassette for a Thermal Printer." The '995 Patent was duly and legally issued on October 27, 1998 by the United States Patent and Trademark Office. A true and correct copy of the '995 Patent is attached hereto as Exhibit 2.

53.   DYMO is the owner of the '995 Patent. Sanford is the exclusive licensee of the '995 Patent and possesses all rights of recovery under the '995 Patent, including the exclusive right to sue for infringement and recover past damages.

54.   The '995 Patent provides, among other things, "a tape holding case for a thermal printer, said tape holding case holding at least a supply of image receiving tape and having an outlet through which the image receiving tape can be fed out, the tape holding case having a wall portion adjacent the outlet, wherein the wall portion is configured and dimensioned to cooperate

with an output roller of a printing device into which the tape holding case is inserted, with the wall portion and roller both contacting the tape so that rotation of the roller slides the tape against the wall portion to feed the tape out of the tape holding case."

55.     Each Defendant has infringed one or more claims of the '995 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '995 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

56.     Each Defendant also has infringed under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '995 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '995 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '995 Patent to the injury of Sanford.

57.     Each of the Defendants, as the original owner or affiliate of the original assignee of the '995 Patent had knowledge of the '995 Patent since its filing and issue date, and by committing the actions described above, had specific intent to induce infringement of the '995 Patent pursuant to 35 U.S.C. § 271(b).

58.     Each of the Defendants has willfully and intentionally infringed upon the '995 Patent without authority and/or license from Plaintiffs.

59.     Plaintiffs are entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT THREE
## WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,152,623

60.     Plaintiffs reallege and incorporate by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

61.     U.S. Patent Number 6,152,623 ("the '623 Patent") is entitled "Tape Printing Apparatus and Tape Holding Cases." The '623 Patent was duly and legally issued on November 28, 2000 by the United States Patent and Trademark Office. A true and correct copy of the '623 Patent is attached hereto as Exhibit 3.

62.     DYMO is the owner of the '995 Patent. Sanford is the exclusive licensee of the '995 Patent and possesses all rights of recovery under the '995 Patent, including the exclusive right to sue for infringement and recover past damages.

63.     The '623 Patent provides, among other things, "a tape holding case for use with a tape printing apparatus having a print head for printing an image on an image receiving tape, and a surface, said print head and said surface having a first printing position in which said print head acts against said surface and a second non-printing position in which said print head and said surface are spaced apart, said tape holding case housing a supply of image receiving tape and having an interaction portion for separating the print head and the surface so that the print head and the surface are in the second position during insertion of the tape holding case in the tape printing apparatus, said interaction portion being arranged so that the print head and said surface are in the first position when the tape holding case is received in said tape printing apparatus."

64.     Each Defendant has infringed one or more claims of the '623 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '623 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

65.     Each Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '623 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '623 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '623 Patent to the injury of Sanford.

66.     Each of the Defendants, as the original owner or affiliate of the original assignee of the '623 Patent has had knowledge of the '623 Patent since its filing and issue date, and by continuing the actions described above, has had specific intent to induce infringement of the '623 Patent pursuant to 35 U.S.C. § 271(b).

67.     Each of the Defendants is willfully and intentionally infringing the '623 Patent without authority and/or license from Sanford. Defendants' infringement has damaged and irreparably harmed Plaintiffs.  Each Defendant's infringement of Plaintiffs rights will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

68.     Plaintiffs are entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT FOUR
## WILLFUL INFRINGEMENT OF U.S. PATENT NO. 6,890,113

69.     Plaintiffs reallege and incorporate by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

70.     U.S. Patent Number 6,890,113 ("the '113 Patent") is entitled "Tape Printers." The '113 Patent was duly and legally issued on May 10, 2005 by the United States Patent and Trademark Office, based on an application listing David Block as a named inventor.  A true and correct copy of the '113 Patent is attached hereto as Exhibit 4.  Mr. Block assigned all right, title and interest in the '113 Patent to Esselte N.V. (which was the former name of DYMO B.V.B.A.) pursuant to the true and correct copy of the assignment attached as Exhibit 8.

71.     DYMO is the owner of the '113 Patent.  Sanford is the exclusive licensee of the '113 Patent and possesses all rights of recovery under the '113 Patent, including the exclusive right to sue for infringement and recover past damages.

72.     The '113 Patent provides, among other things, "a method for printing an image on an image receiving tape comprising the steps of receiving data containing information for a plurality of individual labels, processing said data to identify a plurality of individual label data fields to be printed on said plurality of individual labels, generating a plurality of individual labels from the identified data, and printing said plurality of individual labels."

73.     Each Defendant has infringed one or more claims of the '113 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '113 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

74.     Each Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '113 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '113

Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '113 Patent to the injury of Sanford.

75.    Each of the Defendants, as the original owner or affiliate of the original assignee of the '113 Patent has had knowledge of the '113 Patent since its filing and issue date, and by continuing the actions described above, has had specific intent to induce infringement of the '113 Patent pursuant to 35 U.S.C. § 271(b).

76.    Each of the Defendants is willfully and intentionally infringing the '113 Patent without authority and/or license from Plaintiffs. Defendants' infringement has damaged and irreparably harmed Plaintiffs. Each Defendant's infringement of Plaintiffs' rights will continue to damage Plaintiffs, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

77.    Plaintiffs are entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT FIVE**
**WILLFUL INFRINGEMENT OF U.S. PATENT NO. 7,140,791**

78.    Sanford realleges and incorporates by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

79.    U.S. Patent Number 7,140,791 ("the '791 Patent") is entitled "Vertical Autosizing Printing System." The '791 Patent was based on U.S. patent application No. 10/975,409, that was sold to Newell via the SPA. The '791 Patent was duly and legally issued on November 28, 2006 by the United States Patent and Trademark Office. A true and correct copy of the '791 Patent is attached hereto as Exhibit 5.

80.     Sanford is the owner by assignment of the '791 Patent and possesses all rights of recovery under the '791 Patent, including the exclusive right to sue for infringement and recover past damages.

81.     The '791 Patent provides, among other things, "a method for printing an image on an elongate image receiving medium comprising the steps: inputting data defining the image to be printed; selecting a vertical printing mode in which the image is to be printed across the width of the elongate image receiving medium; initiating a print operation for printing the image; generating print data, in accordance with a print data generation method which ensures that the image fits in the width of the elongate receiving medium, wherein the print data generation method comprises the steps of calculating a length of the image with a first character size and comparing said length to at least two predetermined ranges, each of said predetermined ranges being associated with a predetermined character size; and printing the image with the predetermined character size corresponding to the range in which said calculated length is situated."

82.     Each Defendant has infringed one or more claims of the '791 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '791 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

83.     Each Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '791 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '791

Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '791 Patent to the injury of Sanford.

84.     Each of the Defendants, as the original owner or affiliate of the original assignee of the '791 Patent has had knowledge of the '791 Patent since its filing and issue date, and by continuing the actions described above, has had specific intent to induce infringement of the '791 Patent pursuant to 35 U.S.C. § 271(b).

85.     Each of the Defendants is willfully and intentionally infringing the '791 Patent without authority and/or license from Sanford. Each Defendant's infringement of Plaintiff's exclusive rights under the '791 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

86.     Sanford is entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT SIX
## WILLFUL INFRINGEMENT OF U.S. PATENT NO. 7,990,567

87.     Plaintiffs reallege and incorporate by reference the allegations included in the foregoing paragraphs as if fully set forth herein.

88.     U.S. Patent Number 7,990,567 ("the '567 Patent") is entitled "Label Printer." The '567 Patent was duly and legally issued on August 2, 2011 by the United States Patent and Trademark Office. The '567 Patent is a continuation of U.S. patent application No. 10/436,363 that was sold to Newell via the SPA. A true and correct copy of the '567 Patent is attached hereto as Exhibit 6.

89.     DYMO is the owner of the '567 Patent.  Sanford is the exclusive licensee of the '567 Patent and possesses all rights of recovery under the '567 Patent, including the exclusive right to sue for infringement and recover past damages.

90.     The '567 Patent provides, among other things, "a method for printing an image on an image receiving medium comprising the steps of inputting the image to be printed; printing the image on the image receiving medium; storing a plurality of images, such that each time an image is printed said image is stored; and recalling one of said stored images, wherein the method further comprises one of editing and reprinting said recalled stored image."

91.     Each Defendant has infringed one or more claims of the '567 Patent, and continues to infringe, contribute to infringement of, and/or induce infringement of the '567 Patent, by making, using, selling, offering for sale, and/or importing the Leitz Icon Printer and its Intelligent Label Cartridge, in violation of 35 U.S.C. § 271.

92.     Each Defendant also infringes under 35 U.S.C. § 271(b) and (c) by inducing and/or contributing to infringement of the '567 Patent in the State of New York, literally or under the doctrine of equivalents, in this judicial district, and elsewhere in the United States, by, among other things, performing certain steps of the methods and systems claimed by the '567 Patent, and advising, encouraging, contributing, or otherwise inducing others to perform the remaining steps claimed by the '567 Patent to the injury of Sanford.

93.     Each of the Defendants, as the original owner or affiliate of the original assignee of the parent application to the '567 Patent has had knowledge of the '567 Patent since its filing and issue date, and by continuing the actions described above, has had specific intent to induce infringement of the '567 Patent pursuant to 35 U.S.C. § 271(b).

94.     Each of the Defendants is willfully and intentionally infringing the '567 Patent without authority and/or license from Plaintiffs. Each Defendant's infringement of Plaintiffs' exclusive rights under the '567 Patent will continue to damage Plaintiffs, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

95.     Plaintiffs are entitled to recover from each Defendant the damages sustained as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

96.     Plaintiffs hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

97.     Plaintiffs respectfully request that the Court find in their favor and against the Defendants, and that the Court grant Plaintiffs the following relief:

    A. A judgment in favor of Plaintiffs that Defendants have infringed one or more of the claims, directly, jointly and/or indirectly, by way of inducing and/or contributing to the infringement of each of the Asserted Patents;

    B. A preliminary and/or permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants and their officers, directors, agents servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of U.S. Patent Nos. 6,152,623, 6,890,113, 7,140,791, and/or 7,990,567, or such other equitable relief the Court determines is warranted;

C.  An award to Plaintiffs of damages adequate to compensate Plaintiffs for the Defendants' acts of infringement together with pre-judgment and post-judgment interest;

D.  That the Court find Defendants' acts of infringement willful and award treble damages for such willful infringement pursuant to 35 U.S.C. § 284;

E.  That this Court declare this to be an exceptional case and award Plaintiffs their reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F.  Any further relief that this Court deems just and proper.

DATED: September 19 2014                Respectfully submitted,

                                        KILPATRICK TOWNSEND & STOCKTON LLP

                                        By: _____

                                        Frederick L. Whitmer (FW-8888)

                                        The Grace Building
                                        1114 Avenue of the Americas
                                        New York, NY, USA 10036-7703
                                        Telephone: (212) 775 8700
                                        Facsimile: (212) 775 8800

                                        Wab Kadaba (Georgia Bar No. 405727)
                                        Mitch Stockwell (Georgia Bar No. 682912)
                                        Richard Goldstucker (Georgia Bar No. 940472)

                                        1100 Peachtree Street, Suite 2800
                                        Atlanta, GA  30309-4530
                                        Telephone: (404) 815-6500
                                        Facsimile: (404) 815-6555

                                        *Attorneys for Plaintiffs*

US2008 5900730 5                        22